**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| R.E.H. & P.L. LLC,<br>*Plaintiff*, | §<br>§<br>§<br>§ | |
| v. | § | Civil Action No. 26-5825 |
| EDWARD F. VALDESPINO,<br>*Defendant*. | §<br>§<br>§<br>§ | |

**PLAINTIFF R.E.H. & P.L. LLC'S VERIFIED ORIGINAL COMPLAINT**

Plaintiff, R.E.H. & P.L. LLC ("**REH**"), by and through its attorneys, Cubeta Law Group, PLLC, files this Verified Original Complaint against Defendant EDWARD F. VALDESPINO ("**Valdespino**") and would respectfully show the Court as follows:

## I. PRELIMINARY STATEMENT

1. This case concerns a specifically identifiable $1,000,000 escrow res that Valdespino, a licensed Texas attorney, expressly agreed in writing to hold in his IOLTA account as escrow property for thirty (30) business days.

2. The written agreement provides that the funds were to remain in escrow at all times and be returned if the contemplated transaction did not proceed.

3. The transaction did not proceed; the escrow period expired months ago, REH repeatedly demanded the return of its funds, and Valdespino has refused to return Plaintiff's funds.

## II. PARTIES

4. Plaintiff R.E.H. & P.L. LLC is a New Hampshire limited liability company with its principal place of business located at 5151 Broadway Blvd., Suite 1700, Tucson, Arizona 85711.

5. Defendant EDWARD F. VALDESPINO is an individual domiciled in Texas and a citizen

of Texas. He may be served at 8000 IH-10 West, Suite 1500, San Antonio, Texas 78230 or wherever he may be found.

## III. JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between a citizen of Texas and a citizen of Arizona because REH's sole member, Kelly Labrie, is domiciled in and a citizen of Arizona. The amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because Valdespino resides in this District and a substantial part of the events and omissions giving rise to the claims occurred in this District.

## IV. STATEMENT OF FACTS

8. On April 15, 2026, Plaintiff was presented with a proposal for participation in a structured transaction. The proposal contemplated that $1,000,000 would be placed into escrow with attorney Edward F. Valdespino under separate escrow instructions and documentation.

9. On April 23, 2026, REH, and two of REH's investors, Iron Mountain Holdings, LLC and TradeWell Capital LLC executed a written Loan and Escrow Participation Agreement ("**Escrow Agreement**") with Valdespino. A true and correct copy of the Agreement is attached as Exhibit A.

10. The Escrow Agreement identifies REH as the "Borrower", REH's two investors as the "Lender," and Valdespino as the "Escrow Agent." *See* Ex. A. The Escrow Agreement states that temporary loan existed for the sole purpose of enabling REH's participation in the contemplated transaction requiring escrow placement with Valdespino. *Id.* at ¶ 1.

11. The Escrow Agreement provides that the full $1,000,000 loan amount would be wired

directly into escrow with Valdespino, that the funds would be held in escrow by Valdespino for thirty business days, and that the funds would serve exclusively as participation capital for the contemplated transaction. *Id*. at ¶¶ 1-3.

12. The Escrow Agreement identifies the receiving account as "EDWARD F. VALDESPINO" at PNC Bank and expressly provides that the funds "shall be held strictly as escrow property under attorney control." *Id*. at ¶ 4.

13. The Escrow Agreement further provides that "[f]unds remain in escrow at all times" and are not deployed into market-risk positions. *Id*. at ¶ 7. The Escrow Agreement expressly states that if the transaction does not proceed, then "[t]he escrowed $1,000,000 shall be returned." *Id*.

14. Valdespino signed the Escrow Agreement in the designated signature block as "Escrow Agent/Attorney." Valdespino accepted possession and control of the escrowed property subject to the written restrictions imposed by the Escrow Agreement and the fiduciary obligations imposed on an escrow agent under Texas law.

15. Pursuant to the Escrow Agreement, Iron Mountain Holdings LLC and TradeWell Capital LLC transmitted $1,000,000 in loan proceeds for REH directly to Valdespino's IOLTA account. REH remains obligated on the loan and has a direct contractual, possessory, and equitable interest in the escrowed property and its proper return.

16. The contemplated transaction did not proceed within the agreed thirty-business-day escrow period. The escrow period expired, and the contractual purpose for Valdespino's continued possession of the funds ended.

17. REH repeatedly instructed Valdespino to return the escrowed funds, but Valdespino refused to return the funds.

18. On August 18, 2026, REH's then-counsel sent Valdespino a written demand requiring

return of the $1,000,000 by August 24, 2026. The demand also requested that, if Valdespino refused, he must identify the contractual provision supposedly authorizing continued retention and explain the reason for his refusal. A true and correct copy of the demand is attached as Exhibit B.

19. The August 24 deadline passed. Valdespino did not return the $1,000,000. He continues to withhold the escrowed property despite expiration of the escrow term and REH's demands.

20. REH has not authorized Valdespino to transfer, invest, encumber, pledge, dissipate, conceal, or otherwise dispose of the $1,000,000 outside the limited escrow purpose stated in the Escrow Agreement.

21. REH seeks both legal and equitable relief directed to the specific escrow property and any directly traceable proceeds. REH does not seek a prejudgment freeze of unrelated assets.

## V. COUNT ONE – BREACH OF CONTRACT

22. REH incorporates the preceding paragraphs.

23. The Escrow Agreement is a valid and enforceable contract. REH performed all conditions precedent to Valdespino's obligation to preserve and return the escrowed property.

24. Valdespino breached the Escrow Agreement by, and among other things, failing to return the $1,000,000 after expiration of the thirty-business-day escrow period and failure of the contemplated transaction to proceed; refusing REH's demands for return; conditioning return on requirements not contained in the Escrow Agreement; and, on information and belief, failing to preserve the escrowed property strictly in escrow as required.

25. Valdespino's breaches have caused REH actual damages and continuing injury, including exposure on the underlying loan and loss of the use and control of the escrow property.

## VI. COUNT TWO – BREACH OF FIDUCIARY DUTY

26. REH incorporates the preceding paragraphs.

27. As the expressly designated escrow agent who accepted control of the escrowed property, Valdespino owed REH fiduciary duties arising under Texas law, including duties of loyalty, full disclosure, and a high degree of care to conserve money and pay it only to persons entitled to receive it. *See City of Fort Worth v. Pippin*, 439 S.W.2d 660, 665 (Tex. 1969); *Bates Energy Oil & Gas, LLC v. Complete Oil Field Servs., LLC*, 361 F. Supp. 3d 633, 659-60 (W.D. Tex. 2019).

28. Valdespino breached those duties by refusing to return the escrowed property when the escrow purpose ended; failing to provide a complete accounting and satisfactory confirmation of the present location and status of the escrowed property; placing the interests or demands of a nonparty ahead of REH's rights; and, on information and belief, failing to conserve the funds strictly as escrow property.

29. The breaches caused injury to REH and conferred an improper benefit on Valdespino. REH seeks actual damages and all equitable remedies available for breach of fiduciary duty, including accounting, disgorgement where supported, tracing, and constructive trust.

## VII. COUNT THREE – CONVERSION

30. REH incorporates the preceding paragraphs.

31. The $1,000,000 is specific, identifiable money delivered for a particular purpose, required to remain in a designated escrow account, and subject to an obligation to be returned when the limited purpose ended. REH has the right to possession and control of the escrow property consistent with the Escrow Agreement.

32. Valdespino has wrongfully exercised dominion and control over the escrow property inconsistent with REH's rights by refusing to return it after the escrow purpose ended and after demand.

33. REH has suffered damages as a result.

## VIII. COUNT FOUR – CIVIL THEFT/TEXAS THEFT LIABILITY ACT

34. REH incorporates the preceding paragraphs.

35. Based on information and belief, Valdespino has intentionally or knowingly appropriated, transferred, disposed of, or continued exercise control over the escrow property without effective consent and with intent to deprive the person entitled to the property. Therefore, Valdespino's conduct constitutes theft under Texas Penal Code § 31.03 and gives rise to civil liability under Texas Civil Practice and Remedies Code Chapter 134.

36. REH seeks actual damages, statutory damages allowed by law, reasonable and necessary attorneys' fees, and costs under Chapter 134.

## IX. EMERGENCY AND PERMANENT INJUNCTIVE RELIEF

37. REH seeks a temporary restraining order, preliminary injunction, and permanent injunction preserving the specifically identifiable escrow property and its directly traceable proceeds pending adjudication.

38. The requested interim relief is narrowly tailored to the property in dispute: the $1,000,000 delivered to Valdespino's IOLTA under the Escrow Agreement and any direct, traceable proceeds. REH does not seek to freeze unrelated assets.

39. Absent immediate preservation relief, REH faces a substantial threat that the specific property will be transferred, dissipated, concealed, or rendered untraceable, thereby defeating the constructive-trust, accounting, tracing, and restitutionary relief sought. The threat is concrete because Valdespino has retained the property long after the agreed escrow period, refused repeated demands for return, and has not provided REH satisfactory proof that the entire property remains intact in the designated IOLTA.

40. Preservation imposes no cognizable hardship on Valdespino because the Escrow

Agreement already requires that the funds remain in escrow at all times and gives him no beneficial ownership of them.

41. The public interest favors enforcement of written escrow instructions and preservation of property entrusted to an attorney acting as escrow agent.

## X. CONDITIONS PRECEDENT

42. All conditions precedent to REH's claims have occurred, been performed, or have been waived.

## PRAYER

**WHEREFORE**, Plaintiff respectfully requests that Valdespino be cited to appear and answer and that, after trial, the Court award: (a) return/restoration of the $1,000,000; (b) actual damages; (c) temporary, preliminary, and permanent injunctive relief preserving the property; (d) statutory damages and attorneys' fees under the Texas Theft Liability Act if established; (e) other attorneys' fees recoverable by contract or statute; (f) pre- and post-judgment interest; (g) costs; and (h) all other relief, legal, or equitable, to which REH is entitled.

Respectfully submitted,

**CUBETA LAW GROUP, PLLC**

By:_____*/s/ Kelli Cubeta*_____
Kelli P. Cubeta
Texas Bar No. 24040746
Email: Kelli.Cubeta@CubetaLaw.com
322 Martinez Street
San Antonio, Texas 78205
Telephone: (210) 934-4500

**ATTORNEY FOR PLAINTIFF**
**R.E.H. & P.L. LLC**